IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-287-RJ

| | |
|---|---|
| LLOYD CALVIN MCCLURE, <br><br> Plaintiff/Claimant, <br><br> v. <br><br> MARTIN O'MALLEY, <br> *Commissioner of Social Security*, <br><br> Defendant. | O R D E R |

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-12, -15]. Claimant Lloyd Calvin McClure ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant filed a response to the Commissioner's brief, [DE-16], the time for further responsive briefing has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the court orders the case remanded to the Commissioner for further proceedings consistent with this Order.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on March 3, 2020, alleging disability beginning July 27, 2018. (R. 14, 435–38). His claim was denied initially and upon reconsideration. (R. 14, 294–322). A telephonic hearing before an Administrative Law Judge ("ALJ") was held on November 2, 2022, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 33–62). On

November 15, 2022, the ALJ issued a decision denying Claimant's request for benefits. (R. 11–32). After the Appeals Council denied Claimant's request for review, (R. 1–6), he filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 16). Next, the ALJ determined

3

Claimant had the severe impairments of obesity, degenerative disc disease of the lumbar spine, type 2 diabetes mellitus, left rotator cuff tear, hypertension, acute myocardial infarction, syncope, carpal tunnel syndrome, cubital tunnel syndrome, and kidney failure, as well as the non-severe impairments of wrist pain, left knee sprain, and depression. (R. 16–18). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 17–18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that he had the ability to perform light work[1] with the following restrictions:

> [L]ift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk 6 hours in an 8-hour workday; push/pull as much as he can lift/carry; occasionally reach overhead to the left and for all other reaching, he can reach occasionally to the left; frequently handle, finger, and feel with the left upper extremity; frequently climb ramps and stairs but occasionally climb ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl; occasionally work at unprotected heights, around moving mechanical parts, and operate a motor vehicle. Time off task can be accommodated by normal breaks.

(R. 20–26). In making this assessment, the ALJ found that Claimant's statements about his limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 21). At step four, the ALJ concluded Claimant did not have the RFC to perform the

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

requirements of his past relevant work as a delivery route truck driver and assembler. (R. 26). At step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that he can perform. (R. 26–27).

## V. DISCUSSION

Claimant alleges that the ALJ erred by failing to resolve a conflict between a "very persuasive" functional capacity evaluation ("FCE") and the RFC. Pl.'s Br. [DE-12] at 7–17; Pl.'s Reply [DE-16]. The Commissioner contends substantial evidence supports the ALJ's RFC finding. Def.'s Br. [DE-15] at 6–9.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20

5

C.F.R. § 404.1545(a)(3). The applicable regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency. *Id.* § 404.1520c(a).

On November 26, 2019, a functional capacity evaluation was conducted to determine Claimant's ability to perform work tasks. (R. 772–79). The evaluator concluded, in relevant part, that Claimant's physical capacity was at a "light physical demand level," he could lift 20 pounds occasionally and 10 pounds frequently from floor to 48 inches, and he could "lift and carry" 10 pounds on an occasional basis. (R. 772, 779). The ALJ characterized the FCE as finding Claimant capable of "light work" and determined that it was "very persuasive" because "the examiner was able to put the claimant through various tests and maneuvers." (R. 25).

6

Claimant contends the FCE's conclusion that Claimant can carry 10 pounds occasionally is below the light exertion level and thus, inconsistent with the RFC. Pl.'s Br. [DE-12] at 12. Claimant reasons that since the ALJ found the FCE very persuasive, he should have explained why he did not adopt the limitation to carrying 10 pounds occasionally. *Id.* at 12–13. The Commissioner argues that the ALJ was not required to adopt all the FCE's findings simply because he found it to be persuasive, and other evidence supports the ALJ's decision. Def.'s Br. [DE-15] at 8–9.

In *Ezzell v. Berryhill*, the Fourth Circuit found error where the ALJ gave significant weight to a medical opinion that indicated the claimant required a cane and was severely impaired in the ability to move about but then implicitly rejected that opinion, without discussion, by concluding that the claimant failed to demonstrate the inability to effectively ambulate on a sustained basis. 688 F. App'x 199, 201 (4th Cir. 2017); *see also Adams v. Comm'r of Soc. Sec.*, No. 3:20-CV-00224-RJC, 2022 WL 634213, at *3 (W.D.N.C. Mar. 3, 2022) ("Courts in this district have further explained 'that an ALJ cannot implicitly reject portions of a doctor's opinion [that the ALJ found persuasive] that are inconsistent with her RFC without' adequately explaining her reasoning.") (citing *Clark v. Berryhill*, No. 5:17-CV-143-DCK, 2018 WL 3014408, at *5 (W.D.N.C. June 15, 2018)).

Here, the ALJ determined that Claimant could perform light work, including lifting and carrying 20 pounds occasionally and 10 pounds frequently. (R. 20); *see* 20 C.F.R. § 404.1567(b) (providing that light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds). This is in material conflict with the FCE's conclusion that Claimant could lift and carry 10 pounds occasionally, (R. 772, 779), and the ALJ failed to explain why he did not adopt this limitation despite finding the FCE to be very

7

persuasive. *See Saunders v. O'Malley*, No. 5:23-CV-48-RJ, 2024 WL 1116972, at *4 (E.D.N.C. Mar. 14, 2024) (finding error where the ALJ failed to explain why he rejected a limitation from an opinion he found to be well supported and consistent with the conclusions of treatment providers).

There is also some ambiguity in the FCE itself as to Claimant's ability to carry, which the ALJ does not address. The ALJ specifically cited to the following page within the FCE:

### FUNCTIONAL CAPACITY DATA COLLECTION

NAME: Lloyd McClure

DATE: 11/26/19

DOCTOR: Dr. Szura

#### MATERIAL-HANDLING ACTIVITIES

|  | Occasional 1-33% Day | Frequent 34-66% | Constant 67-100% |
|---|---|---|---|
| LIFTING FROM: |  |  |  |
| 18" to knuckle | 20.0 lbs. | 10.0 lbs. | N/A |
| Knuckle to shoulder | 10.0 lbs. | 0.0 lbs. | N/A |
| Knuckle to overhead | 0.0 lbs. | 0.0 lbs. | N/A |
| Floor to waist | 20.0 lbs. | 10.0 lbs. | N/A |
| Floor to knuckle | 20.0 lbs. | 10.0 lbs. | N/A |
| Right hand floor to waist | 48.0 lbs. | N/A | N/A |
| Left hand floor to waist | 5.0 lbs. | N/A | N/A |
| Carrying | 20.0 lbs. | 10.0 lbs. | N/A |
| Push/Pull Sled | 100.0 lbs. | N/A | N/A |

COMMENTS: Mr. McClure demonstrates a light physical demand level. The occasional lifting protocol was terminated due to reported left shoulder pain 9/10 and upper extremity weakness.

8

(R. 25, 774). This portion of the FCE appears to indicate that Claimant can carry 20 pounds occasionally and 10 pounds frequently, which is consistent with the demands of light work found in the RFC, (R. 20); *see* 20 C.F.R. § 404.1567(b), but inconsistent with the FCE's own conclusion that Claimant could lift and carry only 10 pounds occasionally, (R. 772, 779). The court cannot find that the Functional Capacity Data Collection constitutes substantial evidence supporting the ALJ's RFC given the material inconsistency within the FCE on the frequency with which Claimant can carry ten pounds.

Additionally, while the Commissioner is correct that the ALJ need not defer to any medical opinion or prior administrative finding, 20 C.F.R. § 404.1520c(a), the ALJ must provide a sufficient explanation so that the court can trace his reasoning, *see Alonna A. v. Kijakazi*, No. CV 22-3115-CDA, 2023 WL 8373378, at *4 (D. Md. Dec. 1, 2023) (the ALJ's failure to explain why the limitations opined by sources whose opinions were found to be persuasive were not fully incorporated into the RFC "deprives the ALJ's decision of the requisite 'logical bridge' between the evidence and the RFC that would allow this Court to trace the ALJ's reasoning) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). The ALJ found the FCE to be "very persuasive," but the FCE is unclear on Claimant's ability to lift and carry, and the result may be case dispositive, so the error is not harmless. The Commissioner points to other evidence in support of the RFC, such as an FCE from August 7, 2021, finding Claimant had mild limitations in lifting and carrying and could lift and carry light objects, which the ALJ found "mostly persuasive." (R. 893–904). However, the FCE is unhelpful on the disputed issue of how much Claimant can lift and carry because, as the ALJ pointed out, the the examiner did not define what is meant by "mild limitations," (R. 26), and the FCE is silent on the frequency with which Claimant can carry light objects, i.e., frequently or occasionally. The court finds remand

9

is necessary so that the ALJ can clarify his reasoning regarding the November 26, 2019 FCE and Claimant's ability to lift and carry.

## VI. CONCLUSION

For the reasons stated above, the case is REMANDED for further proceedings consistent with this order.

So ordered, the 3rd day of June 2024.

Robert B. Jones, Jr.
United States Magistrate Judge